# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Pinky's Aggregates, Inc., | ) |
| Plaintiff, | ) |
| vs. | ) Case No: 4:14-cv-12 |
| Atlantic Building Systems, LLC d/b/a Armstrong Steel Corporation, | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |

Defendant, Atlantic Building Systems, LLC, d/b/a Armstrong Steel Corporations, ("Armstrong") removed the above-captioned matter to this court pursuant to 28 U.S.C. §§ 1441(b), 1332, and 1446. (Doc. #1). Plaintiff, Pinky's Aggregates, Inc. ("Pinky's") filed a complaint and demand for jury trial against Armstrong for breach of contract, breach of express and implied warranties, actual fraud, unlawful sales practices, and negligent construction regarding Armstrong's construction of a building for Pinky's. (Doc. #1). Armstrong filed a motion to dismiss, or in the alternative a motion to stay pending completion of arbitration, (Doc. #3, Doc. #6) because Armstrong alleges Pinky's claims are subject to mandatory binding arbitration. (Doc. #4). Pinky's contends Armstrong's motion should be denied because the mandatory binding arbitration clause is unenforceable since it lacks consent and consideration and the terms are ambiguous and unconscionable. (Doc. #7). Pinky's filed a motion for hearing on Armstrong's motion to dismiss or in the alternative stay pending completion of arbitration. (Doc. #9). Armstrong requested the motion to dismiss or in the alternative stay pending completion of arbitration be decided on briefs and not oral argument. (Doc. #3).

**Summary of Recommendation**

Since Pinky's claims extend beyond the narrow scope of the contracts containing the arbitration clauses, Armstrong has failed to show it is entitled to arbitration. Accordingly, the Magistrate Judge **RECOMMENDS** the Defendant's motion to dismiss (Doc. #3) be **DENIED**, the Defendant's alternative motion to stay pending completion of arbitration (Doc. #6) be **DENIED**, and Plaintiff's motion for hearing (Doc. #9) be **DENIED**.

**Factual Background**

In mid-July of 2011, Pinky's contacted Armstrong for a bid regarding the purchase of a metal building. (Doc. #7). Pinky's claims it made it clear to Armstrong it required a complete building that would be immediately useable, in other words a "turn key" building, by October 1, 2011. (Doc. #7, Doc. #8). Pinky's alleges Armstrong assured Pinky's it would be able to provide a turn key building by October 1, 2011[1] and submitted a bid accordingly. Id. On July 29, 2011, Pinky's accepted Armstrong's bid for parts and materials (Doc. #8-2) for the building and pursuant to the agreement Pinky's tendered a non-refundable deposit check in the amount of $50,000 to Armstrong.[2] Id. Pinky's asserts it would not have accepted the bid but for Armstrong's promise it would provide a complete building by October 1, 2011. Id. Pinky's claims at the time it accepted the bid on July 29, 2011 and was required to pay the $50,000 deposit, Armstrong did not provide documentation or otherwise mention anything regarding arbitration to Pinky's. Id.

---

[1] Pinky's claims it required Armstrong to have the building be turn key except for the electrical work which could be completed at a later date. (Doc. #7).

[2] In addition to listing specifications for the building, the bid stated, "Armstrong Steel will supply concrete and erection that shall not exceed $20/sq. ft." (Doc. #8-2).

On August 1, 2011, Pinky's alleges Armstrong required it to sign a document ("Purchase Agreement," Doc. #8-3) confirming the purchase of the building and providing that the terms and conditions of this document were purportedly non-negotiable. Id. Specifically, Pinky's notes that the document provided in the fine print: "All disputes shall be arbitrated pursuant to paragraph 10 of the conditions page" but that paragraph 10 of the conditions page makes no mention of arbitration, nor does any other language on the conditions page. Id. Rather, paragraph 10 of the conditions page contains a venue selection clause and a waiver by both parties of trial by jury. Id.

On September 13, 2011, Pinky's signed two additional contracts with Armstrong: one contract for concrete work ("Concrete Contract") and another contract for the labor for erection of the building ("Erection of the Building Contract"). (Doc. #4, Doc. #7). Both contracts contain nearly identical terms and conditions including arbitration clauses which provide *inter alia* arbitration shall proceed in Denver, Colorado and Pinky's waives its right to seek remedies in court, including any right to a jury trial. Id. Pinky's contends the terms and conditions of these contracts were non-negotiable. (Doc. #7). The court notes paragraph 8 in both contracts limits the scope of the respective contracts to only concrete work and labor for the erection of the building. (Doc. #4).

Pinky's claims Armstrong ultimately failed to provide a turn key building by October 1, 2011. (Doc. #7, Doc. #8). Pinky's contends after Armstrong repeatedly moved the completion date back until after Christmas 2011[3], Pinky's hired alternative contractors to complete

---

[3] Armstrong's briefs were silent regarding the status of construction of the building; however, Pinky's stated by Christmas 2011 "Armstrong was nowhere close to being finished. Armstrong never completed any one portion of the building." (Doc. #8).

Armstrong's work. Id. While Pinky's listed problems with the concrete work[4] and the labor for erection of the building[5], Pinky's also listed problems with Armstrong's materials to include *inter alia* lack of steel frames for the windows, insufficient heaters, and missing parts for the overhead doors. (Doc. #8). Pinky's alleges it has paid Armstrong no less than $328,322 for the building, and repairs will cost Pinky's more than $100,000. (Doc. #7, Doc. #8).

## Validity of the Arbitration Agreement

The court notes generally the Federal Arbitration Act ("FAA") "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." Preston v. Ferrer, 552 U.S. 346, 349 (2008). However, "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Newspaper Guild of St. Louis, Local 36047, TNG-CWA v. St. Louis Post Dispatch, LLC, 641 F.3d 263, 266 (8th Cir. 2011)(citing United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960). When deciding whether to compel arbitration, the court must determine whether a valid agreement to arbitrate exists, and if so, whether the dispute falls within the scope of that agreement. Id. (citing United Steelworks of Am. v. Duluth Clinic, Ltd., 413 F.3d 786, 788 (8th Cir. 2005).

Armstrong contends a valid arbitration agreement exists between it and Pinky's because both parties signed two contracts (i.e. the Concrete Contract and the Erection of the Building Contract) containing the provision, "Owner agrees to submit to binding arbitration." (Doc. #4). As noted above, both contracts are limited in their scope. The Concrete Contract states, "The

---

[4] Pinky's stated the "concrete footers of the basement were too weak and started to blow out" and that the concrete cured "in layers and form[ed] cold joints." Id.

[5] Pinky's asserts, "the process of erecting the building stretched on for months. On many days, the crew would not show up, or would show up quite late in the morning." Id.

4

Owner understands that this is a contract for the *concrete of the building only*. . . . The Owner understands that the payments that are required in [this contract] are *only for the concrete of the building only*." (Doc. #4)(emphasis added). Similarly, the Erection of the Building Contract states, "The Owner understands that this is a contract for the *erection of the building only*. . . . The Owner understands that the payments that are required in [this contract] are *only for the erection of the building only*." Id.(emphasis added). Further, the court notes Armstrong and Pinky's signed a third contract on July 29, 2011, (Doc. #8-2) which does not contain an arbitration clause. (Doc. #7, Doc. #8).

Armstrong has not demonstrated that the claims at issue are limited exclusively to concrete work and/or the labor for the erection of the building. Pinky's has cited problems with the materials used for the building (i.e., lack of steel frames for the windows, insufficient electric heaters, and missing parts for the overhead doors, etc.) in addition to problems related to the concrete work and labor for the erection of the building. (Doc. #8). Therefore, assuming without deciding that valid arbitration agreements exist for the concrete work as well as for the labor for the erection of the building, Armstrong has failed to show an arbitration agreement exists between it and Pinky's for the materials used for the construction of the building. The numerous deficiencies alleged by Pinky's cannot be parsed into categories that can be discretely resolved under the three separate contracts. Accordingly, Armstrong has failed to show how the broad nature of Pinky's claims in this case fit within the narrow scope of either the Concrete Contract or Erection of the Building Contract.

## Conclusion

Armstrong has failed to show it is entitled to arbitration because Pinky's claims appear to extend beyond the narrow scope of the Concrete and Erection of the Building Contracts.

Accordingly, it is **RECOMMENDED** the Defendant's motion to dismiss (Doc. #3) be **DENIED**, the Defendant's alternative motion to stay pending completion of arbitration (Doc. #6) be **DENIED**, and Plaintiff's motion for hearing (Doc. #9) be **DENIED**.

Dated this 19th day of June, 2014.

    /s/ *Karen K. Klein*
    Karen K. Klein
    United States Magistrate Judge

### NOTICE OF RIGHT TO OBJECT

Pursuant to Rule 72(a) and (b), Federal Rules of Civil Procedure, and District of North Dakota Local Court Civil Rule 72.1(D)(2) and (3), any party may object to this Report and Recommendation by filing with the Clerk of Court no later than July 7, 2014, a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals.